FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 25, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRITTANY G.,<br><br>                  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | NO:  2:18-CV-150-RMP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment from Plaintiff Brittany G.,[1] ECF No. 11, and the Commissioner of Social Security, ECF No. 16.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claims for benefits under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 11.  The Court has considered the parties' briefings and the record, and is fully informed.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff applied for social security through an application filed on June 23, 2015. Administrative Record ("AR") 15.[2] Plaintiff alleged that her onset date was November 15, 2013, but later amended the alleged onset date to December 14, 2014. *Id.* Plaintiff was 21 years old at the time of her alleged onset date and 22 years old on her amended alleged onset date. AR 93. She completed ten years of school. AR 54. The Commissioner initially denied Plaintiff's applications for disability insurance benefits and supplemental security income, and denied Plaintiff's applications upon reconsideration. AR 86–98, 100–123. Plaintiff timely requested a hearing. AR 33–84.

### B. February 16, 2017 Hearing

A hearing took place before Administrative Law Judge ("ALJ") R.J. Payne on February 16, 2017, with Plaintiff represented by attorney Dana Madsen. AR 33–84. Plaintiff responded to questions from her attorney and Judge Payne. AR 52–76. Fred Cutler, a vocational expert, and Dr. Marian Martin, a medical expert, also appeared at the hearing. AR 36–52; 76–83.

/ / /

/ / /

---

[2] The AR is filed at ECF No. 9.

## C. ALJ's Decision

On April 24, 2017, the ALJ issued an unfavorable decision for Plaintiff. AR 15–26. Utilizing the five-step evaluation process, Judge Payne found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of December 15, 2014. AR 17.

**Step two:** Plaintiff has the following severe impairments: major depressive episode, recurrent mild; anxiety disorder, NOS; unspecified personality disorder; and rule out borderline intellectual functioning. AR 17.

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had the RFC to

> Understand, remember and carry out simple routine work instructions and work tasks; would be best with verbal combined with hands on demonstration of work tasks versus written instructions; can have superficial contact with the general public; can work with or in the vicinity of coworkers, but not in a teamwork type work setting; can handle normal supervision but no over-the-shoulder or confrontational type of supervision; no fast paced or strict production quota type work; would do best in a routine work setting with little or no changes; and would do best with jobs not requiring reading, writing, or use of mathematics.

AR 20.

**Step four:** Plaintiff is incapable of performing past relevant work. AR 25

(citing 20 C.F.R. § 416.965). Plaintiff's past relevant work includes an

automobile service station attendant; animal care taker; and stock clerk. *Id.*

**Step five:** Considering Plaintiff's education, work experience, and RFC,

Plaintiff can work jobs that exist in significant numbers in the national

economy. AR 25. Specifically, the ALJ found that Plaintiff can work as an

agricultural produce packer, agricultural sorter, or cafeteria attendant. AR 25–

26.

The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied Plaintiff's request for review on November 20, 2017. AR

1–4. Plaintiff now seeks judicial review.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's

decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of

benefits only if the ALJ's determination was based on legal error or not supported by

substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing

42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not

disabled will be upheld if the findings of fact are supported by substantial evidence."

*Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

Substantial evidence is more than a mere scintilla, but less than a preponderance.

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v.*

*Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch

inferences and conclusions as the [Commissioner] may reasonably draw from the

evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.

1965).  On review, the district court considers the record as a whole, not just the

evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877

F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.

1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in

evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

interpretation, the court may not substitute its judgment for that of the

Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v.*

*Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by

substantial evidence will still be set aside if the proper legal standards were not

applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health*

*& Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial

evidence to support the administrative findings, or if there is conflicting evidence

that will support a finding of either disability or nondisability, the finding of the

1  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir.

2  1987).

3      **B. Definition of Disability**

4      The Social Security Act defines "disability" as the "inability to engage in any

5  substantial gainful activity by reason of any medically determinable physical or

6  mental impairment which can be expected to result in death or which has lasted or

7  can be expected to last for a continuous period of not less than 12 months."  42

8  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall

9  be determined to be under a disability only if her impairments are of such severity

10  that the claimant is not only unable to do her previous work, but cannot, considering

11  the claimant's age, education, and work experiences, engage in any other substantial

12  gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

13  1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and

14  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

15      **C. Sequential Evaluation Process**

16      The Commissioner has established a five-step sequential evaluation process

17  for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  At step one,

18  the decision maker determines if the claimant is engaged in substantial gainful

19  activities.  If the claimant is engaged in substantial gainful activities, benefits are

20  denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

21

1    If the claimant is not engaged in substantial gainful activities, the decision

2 maker proceeds to step two and determines whether the claimant has a medically

3 severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

4 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination

5 of impairments, the disability claim is denied.

6    If the impairment is severe, the evaluation proceeds to the third step, in which

7 the decision maker compares the claimant's impairment with a number of listed

8 impairments acknowledged by the Commissioner to be so severe as to preclude any

9 gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20

10 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed

11 impairments, the claimant is conclusively presumed to be disabled.

12    If the impairment is not one conclusively presumed to be disabling, the

13 evaluation proceeds to the fourth step, in which the decision maker determines

14 whether the impairment prevents the claimant from performing work that she has

15 performed in the past. If the plaintiff is able to perform her previous work, the

16 claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this

17 step, the claimant's RFC assessment is considered.

18    If the claimant cannot perform this work, the fifth and final step in the process

19 is to determine whether the claimant is able to perform other work in the national

20 economy considering her RFC, age, education, and past work experience. 20 C.F.R.

21 §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

I.     **Did the ALJ improperly discredit Brittany's subjective testimony about her symptoms?**

II.    **Did the ALJ properly consider and weigh the opinion evidence?**

III.   **Did the ALJ's hypothetical question to the vocational expert lack evidentiary basis?**

## DISCUSSION

*Brittany's Subjective Symptom Testimony*

The parties dispute whether the ALJ properly discredited Brittany's testimony regarding the severity of her symptoms when creating Brittany's RFC. ECF No. 11 at 15; ECF No. 16 at 4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

When assessing the credibility of the claimant's subjective testimony, the ALJ

engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.

2012). First, the ALJ determines whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

2007). If the objective medical evidence exists, and there is no evidence that the

claimant is malingering, the ALJ must provide clear and convincing reasons

supported by substantial evidence for rejecting the claimant's testimony. *Smolen*, 80

F.3d at 1281–84. To find a claimant not credible, the ALJ must rely on reasons

unrelated to the claimant's testimony, conflicts between the claimant's testimony

and the claimant's conduct, or internal contradictions in the testimony. *Light v. Soc.*

*Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Additionally, evidence of

conservative treatment or a complete failure to seek treatment can support

discrediting a claimant's testimony. *Molina*, 674 F.3d at 1112; *Parra v. Astrue*, 481

F.3d 742, 750–51 (9th Cir. 2007). But an ALJ cannot reject a claimant's subjective

pain testimony solely based on a lack of support from objective medical evidence.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

If an ALJ finds that the claimant spends a substantial part of her day engaged

in activities transferable to a work environment, then the ALJ may discredit the

claimant's testimony. *Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001).

However, carrying on certain daily activities does not detract from a claimant's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

testimony if those activities are not necessarily transferable to a work setting. *Id.* The Social Security Act does not require claimants be utterly incapacitated to be disabled. *Fair*, 885 F.2d at 603.

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted).

At the first step of evaluating Brittany's symptoms, the ALJ found that Brittany had ailments that could reasonably produce Brittany's alleged symptoms. AR 22. However, at the second step, the ALJ found that Brittany's testimony on the intensity, persistence, and limiting effects of the symptoms were not consistent with other evidence in the record. *Id.* Specifically, the ALJ found that Brittany was resistant to treatment options, including counseling and medication. *Id.* The ALJ also found that Brittany's symptoms were mild at most based on her testimony's contradictions with the objective medical evidence. *Id.* Further, the ALJ found that Brittany reported inconsistent symptoms over a short period of time. *Id.* For these reasons, the ALJ found that Brittany's testimony on her symptoms were "somewhat overstated when compared to the medical evidence." AR 24.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

Brittany objects to the ALJ's findings because she claims the ALJ rejected her testimony for a lack of support from objective medical evidence and "failed to provide specific findings with clear and convincing reasons for discrediting [Brittany's] symptom claims." ECF No. 11 at 16. She claims that her testimony was consistent with the clinic and counseling records provided in the record. *Id.* Specifically, she argues that the ALJ's reasoning supporting his conclusions on Brittany's alleged minimal treatment, hallucinations, and daily activities are not clear and convincing. ECF No. 17 at 2–7.

As to the alleged claims of minimal treatment for her mental impairments, the ALJ found that Brittany did receive counseling, but often cancelled or missed appointments until she was discharged for lack of compliance. AR 22. This finding is supported by the record. AR 422, 433, 443–44, 446, 448–49, 468, 490. Additionally, when she did show up for her appointments, she would state she did not want to be there; that her appointments did not help her; and that she was only there because DSHS told her that she had to go. AR 422–23, 425, 432, 436, 457, 492. Brittany received a prescription for depression, but she stated that there were complications in referring the prescription to her pharmacist, and never ended up trying to get that medication. AR 65–66. Further, the ALJ's remarks on Brittany's hallucinations recognized an inconsistency in Brittany's mental symptoms over a short period of time. AR 22. In a counseling session in June of 2015, Brittany reported having visual hallucinations. AR 426. However, in examinations in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

August and September of 2015, Brittany denied having any hallucinations.  AR 481,

486.  The ALJ's findings as to Brittany's minimal treatment and hallucinations are

supported by the record, and the ALJ did not arbitrarily discredit her testimony.  *See*

*Orteza*, 50 F.3d at 750.

In support of her argument that the ALJ improperly discredited her testimony

with reference to her daily activities, Brittany cited several cases in which courts

found social security claimants disabled despite the claimants being able to complete

some activities.  ECF No. 17 at 4–7.  But the cases are not comparable because each

case involved medical conditions different from Brittany's.  *See Garrison v. Colvin*,

759 F.3d 995, 1015 (9th Cir. 2014) (chronic back and neck pain, degenerative joint

disease, sciatica, obesity, asthma, and herniated discs); *Vertigan*, 260 F.3d at 1049

(chronic back pain syndrome); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(chronic fatigue syndrome); *Purvis v. Comm'r of Soc. Sec. Admin.*, 57 F. Supp. 2d

1088, 1094 (D. Or. 1999) (bipolar disorder, chest pain, diabetes, obesity, affective

disorder, and substance addiction disorder).  When evaluating a claimant's daily

activities, the question is not whether the activities have been previously found to be

dispositive on a finding of disability, but rather whether the claimant spends a

substantial part of her day engaged in activities transferable to a work environment,

or whether her daily activities conflict with her alleged symptoms.  *Vertigan*, 260

F.3d at 1049–50; *Light*, 119 F.3d at 792.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

Here, the ALJ found Brittany not entirely credible in part because her daily activities did not match her alleged symptoms. AR 21–22. Despite claiming that she has difficulty concentrating and staying focused, Brittany completes several tasks around the home, cares for her son, and looks after her pet. AR 21. She also performs household tasks like cleaning, doing laundry, and preparing meals. *Id.* Additionally, she can pay bills, handle bank accounts, and count change. *Id.* While Brittany claims that her "primary problem is having trouble leaving her home and dealing with the stresses of activities outside of her home," she testified that she has never had a panic attack outside of her home, and frequently leaves her home with her boyfriend or her son. ECF No. 17 at 6; AR 21. The ALJ's findings are supported by Brittany's own testimony and reasonably lead to the conclusion that Brittany's activities are transferable to a work setting and conflict with the alleged severity of her symptoms. AR 52–76.

Brittany essentially asks the Court to re-evaluate the evidence in the record and reverse the findings of the ALJ as to Brittany's credibility. *See* ECF No. 11 at 16–17; ECF No. 17 at 2–7. But unless the ALJ commits legal error, the Court will not reverse an ALJ's conclusions when the conclusions are supported by substantial evidence. *Jones*, 760 F.2d at 995. Even though Brittany argues that the ALJ committed legal error by discrediting her testimony for a lack of substantive affirmation by the objective medical evidence, ECF No. 11 at 16–17, the ALJ

1  discredited her testimony because it conflicted with the objective medical evidence.

2  *Light*, 119 F.3d at 792.  The ALJ did not commit legal error.

3       The ALJ gave clear and convincing reasons to discredit Brittany's testimony,

4  and those reasons were supported by substantial evidence.  *Smolen*, 80 F.3d at 1281–

5  84.  The Court finds the ALJ did not err when he discredited Brittany's testimony.

6  ***The Weight Given to the Opinion Evidence***

7       Brittany argues that the ALJ failed to properly consider and weigh the opinion

8  evidence.  ECF No. 11 at 18.

9       With respect to medical opinions, an ALJ must afford more weight to a

10  treating physician's opinion than an examining physician's, and an examining

11  physician's opinion carries more weight than a non-examining, reviewing, or

12  consulting physician's opinion.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir.

13  2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Greater weight may be

14  given to a non-examining physician if that physician testifies at a hearing and is

15  subjected to cross-examination.  *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir.

16  1995).  An ALJ only can reject uncontradicted opinions of a treating or examining

17  physician with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If a

18  physician's opinion is contradicted, then the ALJ can reject that opinion with

19  specific and legitimate reasons that are based on substantial evidence in the record.

20  *Andrews*, 53 F.3d at 1041.

21

1    Brittany argues that the ALJ failed to present a thorough summary of the facts

2  and conflicting clinical evidence before rejecting an examining physician's opinion

3  with specific and legitimate reasons.  ECF No. 11 at 17.  However, Brittany fails to

4  mention in either her motion for summary judgment or her reply brief which

5  examining physician's testimony was improperly rejected.  *See* ECF Nos. 11 & 17.

6    In his decision, the ALJ considered the opinions of two examining physicians,

7  a non-examining testifying physician, and two non-examining non-testifying

8  physicians.  AR 23–24.  He assigned great weight to the two examining physicians

9  and the testifying non-examining physician, while assigning some weight to the two

10  non-examining non-testifying physicians because they were not able to evaluate the

11  entire medical record.  *Id.*  The ALJ did not reject the opinions of the non-examining

12  non-testifying physicians, so it is unclear to what Brittany refers when she states that

13  the ALJ did not justify the rejection of an examining physician's opinion with

14  specific and legitimate reasons.  ECF No. 11 at 17.

15    For these reasons, the Court finds that the ALJ properly considered and

16  weighed the opinion evidence.

17  ***The Evidentiary Basis for the Hypothetical Question***

18    Brittany argues that the hypothetical question posed to the vocational expert at

19  her hearing lacked an evidentiary basis.  ECF No. 11 at 17.

20    If a claimant shows that she cannot return to her previous job, the

21  Commissioner holds the burden of proving that the claimant may engage in

substantial gainful activity considering the claimant's age, education, work

experience, and limitations. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.

1991). The Commissioner usually meets this burden through the use of a vocational

expert. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Hypothetical

questions posed to vocational experts must set out all the limitations and restrictions

of the claimant. *Id.* If the ALJ fails to include all limitations, then the vocational

expert's testimony "has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450,

1456 (9th Cir. 1984). But the ALJ does not have to include limitations in the

hypothetical question that are not supported by substantial evidence in the record.

*Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005).

Brittany argues that "[t]he failure to include the mental impairment in the

hypotheticals alone was sufficient to require a remand." ECF No. 11 at 18.

However, the ALJ's hypothetical included her mental impairments. The ALJ's

hypothetical question presented a claimant that had a ninth-grade education; had an

average ability to read and write and use numbers; had some mental limitation;

could understand, remember, and carry out simple, routine instructions and work

tasks; only could have superficial contact with the general public; only could work

with or in the vicinity of coworkers and not in a team-type setting; and would do

best in jobs not requiring reading, writing, or mathematics. AR 80. These were all

mental limitations supported by substantial evidence in the record.

When Brittany's attorney cross-examined Fred Cutler, the vocational expert, he asked Mr. Cutler to additionally consider that the individual in the hypothetical would have six or seven panic attacks per week; would have to lie down for half an hour to endure the panic attacks; and that the person could only leave the house five times every two weeks. AR 82. To any extent Brittany argues that these limitations should have been included in the original hypothetical, that argument is without merit. The ALJ found that these limitations were not supported by the record, evidenced by Brittany's own testimony. AR 21. Specifically, the ALJ found that Brittany had never had a panic attack outside of her home and that she leaves her home several times per week. *Id.*; *see also* AR 72 ("I don't think I've had one outside of my house, not a panic attack, no."). Because the ALJ does not have to include limitations in a hypothetical question when those limitations are not supported by substantial evidence in the record, the ALJ was not obligated to include these additional limitations in his hypothetical question to Mr. Cutler. *Bayliss*, 427 F.3d at 1217–18.

The ALJ did not err by omitting limitations from his hypothetical question proposed to the vocational expert.

## CONCLUSION

Having found that the ALJ did not err in his decision, the Court grants the Commissioner's motion and denies Brittany's motion. Because the Court finds no

error, the Court does not address Brittany's arguments as to the harmfulness of any

error or a remand with instructions to award benefits.  ECF No. 11 at 18.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. Judgment shall be entered in favor of Defendant

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order, provide copies to counsel, enter judgment as directed, and **close this case**.

**DATED** February 25, 2019.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
